**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
K. D. BUILDERS, INC.,                              Chapter 7
                    DEBTOR                          Case No. 07-10860-WCH

_____


**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is Creditor Framingham Cooperative Bank's (the "Bank")

Motion for Relief from Automatic Stay (the "Motion") and the Chapter 7 Trustee's Opposition to

the Motion by Framingham Cooperative Bank for Relief from the Automatic Stay.  The Bank seeks

relief from stay to setoff a debt of K. D. Builders, Inc., (the "Debtor") against the balance of a bank

account (the "Account"), which the Chapter 7 trustee (the "Trustee") contends is a special deposit

account.  The present issue is whether the funds held in the Account are a mutual debt against which

the Bank may setoff its claim against the Debtor.  For the reasons set forth below, I will enter an

order denying the Motion.

## II. BACKGROUND

The facts of this case are not in dispute and are derived from the pleadings.  On July 16,

2003, the Bank made a $1,275,000 loan to the Debtor evidenced by a promissory note secured by

a mortgage (the "Mortgage") on raw land in the Town of Grafton (the "Town").  The Debtor

intended to develop this land into a sixteen lot subdivision known as Miscoe Farms.

On October 22, 2003, the Debtor, the Town, and the Bank entered into a "Performance

1

Secured by Lender's Agreement" (the "Agreement").  The purpose of the agreement was "to secure

[the] construction of ways and installation of municipal services in the subdivision."  The Agreement

provided in relevant part:

> In consideration of the Town's approval of the definitive plan showing the
> subdivision of the land, the Applicant and Lender hereby bind and obligate
> themselves . . . jointly and severally to the Town in the sum of $209,223.60 dollars,
> and have secured this obligation by the lender retaining from the above referenced
> mortgage proceeds for the benefit of the Town said sum of money otherwise due the
> Applicant to insure the performance by the applicant of all covenants, conditions,
> agreements, terms, and provisions . . .[1]

The Agreement further provided that in the event the Debtor failed to complete the described work,

the Bank would pay the Town sufficient funds from the Account to complete the ways and

improvements.  Moreover, the Debtor could from time to time apply for periodic reductions in the

Account based upon partial completion of the project.  If the Town determined such work was

completed and in compliance with the Agreement, it could then authorize the Bank to disburse a

corresponding portion of the security through a written release.  The Agreement expressly stated that

the Bank's only obligations were to retain the Account funds and release them as provided.

The Bank did not retain the loan proceeds as contemplated by the Agreement.  Rather, the

Debtor funded the Account on February 23, 2004.[2]  A portion of the funds came from the sale of five

of the sixteen lots of the subdivision, while the balance came from the Debtor's checking account.[3]

The Account was held at the Bank in the Debtor's name with two Bank officers as the authorized

---

[1] Docket No. 45, Exhibit A.

[2] Account No. 1047264518.

[3] This sale was done with the Bank's authorization and the Debtor paid the Bank a
portion of the proceeds to release those lots from the Mortgage.  No representation was made
with respect to the source of the funds held in the Debtor's checking account.

signatories.

By June 5, 2005, the Bank had disbursed $109,910.40 from the Account pursuant to the Town's authorization. These funds were deposited into the Debtor's checking account at the Bank. Subsequently, the Debtor abandoned work on the subdivision development project and failed to complete the construction of the ways and improvements.

The Debtor filed a Chapter 7 petition on February 13, 2007. On February 22, 2007, the Bank filed a motion for relief from stay with respect to properties in Douglas and Pocasset, Massachusetts. In its motion, the Bank asserted that the Debtor was in default on three notes and that it was owed approximately $1,198,949.62, far more than the value of the properties. The Debtor filed a response of no objection, and on March 21, 2007, I granted the motion for relief from stay. These properties have since been sold, leaving a deficiency of $326,851.00 under the loans described in the motion for relief from stay.[4]

On April 10, 2007, the Bank filed the Motion, requesting I grant relief so that it could pay the completion costs due to the Town and setoff its own deficiency claim against the balance of the Account. On April 20, 2007, the Chapter 7 trustee (the "Trustee") filed an opposition to the Motion requesting time to conduct limited discovery to determine, *inter alia*, the extent of the Town's claim against the Account.

After numerous continuances to facilitate discovery, the parties filed briefs and a stipulation of facts by early December, 2007. On December 21, 2007, I held a hearing on the Motion at which

---

[4] In the motion for relief, the Bank described that the Debtor was in default under three loans for which the security was properties in Douglas and Pocasset, Massachusetts. In their stipulation of facts, the parties did not describe the disposition of the subdivision. The parties further stipulated that the Bank has now exhausted its collateral and is owed a deficiency in the amount of $326,851.00.

the parties represented that the Town's completion costs were $60,496.42.  As both parties agreed that these funds should be released to the Town and that the dispute was solely with respect to the balance of the Account, I ordered the Bank to release that amount to the Town.  During oral arguments, both parties characterized the present issue differently, albeit, still relating to the mutuality of the debts.  At the conclusion of the hearing, I took the issue of the entitlement of the balance of the Account under advisement.

## III. POSITIONS OF THE PARTIES

### A. The Bank

While conceding that the Account is not a "straight deposit account," the Bank framed the issue as whether mutuality was destroyed by the fact that the amount owed to the Debtor from the Account was not liquidated at the time the petition was filed.  The Bank vaguely asserts that it has established all the elements for a setoff and therefore is entitled to setoff its deficiency claim against the balance of the Account.  It argues that its right of setoff arose pre-petition when it loaned funds to the Debtor pursuant to promissory notes.  As of the petition date, the Bank held the Account with an anticipated balance to be released to the Debtor, which the Bank argues is a mutual debt as it arises from the same financing transaction.[5]  Relying on *In re Moreira*,[6] the Bank asserts that the debts are mutual despite the fact that on the date of the petition, the amount due to the Debtor was contingent and unliquidated.

---

[5] The Bank does not argue that it has a contractual right to setoff regardless of mutuality and therefore I need not address that issue.

[6] *Moreira v. Digital Employees Fed. Credit Union (In re Moreira)*, 173 B.R. 695 (Bankr. D. Mass. 1994).

B. <u>The Trustee</u>

The Trustee primarily argues that the Bank may not setoff its claim against the Account because it has not met the mutuality requirement. Relying on *In re Bay State York Co., Inc.*[7] and *In re Milano Textiles, Inc.*,[8] the Trustee asserts that the Account is a special purpose account and therefore not in the same right as the Bank's pre-petition deficiency claim. As such, there is no mutuality and the Bank is barred from exercising a setoff. Moreover, the Trustee argues that the Bank's reliance on *Moreira* is misplaced because the present case involves a three party surety agreement relating to a special purpose account and not simply a two party bank/depositor relationship. Further, the issue in that case was that the debtor's debt to the bank was not due as of the date of the petition, which is not at issue here. Additionally, the Trustee contends that the Bank has waived its pre-petition deficiency claim as it is unsecured and the Bank failed to file a proof of claim by the claims bar date.

## IV. **DISCUSSION**

Section 553 of the Bankruptcy Code provides in relevant part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .[9]

The United States Court of Appeals for the First Circuit long ago established the standard

---

[7] *Kitaeff v. Vappi & Co., Inc. (In re Bay State York Co., Inc.)*, 140 B.R. 608 (Bankr. D. Mass. 1992).

[8] *In re Milano Textiles, Inc.*, 38 B.R. 964 (Bankr. D. Mass. 1984).

[9] 11 U.S.C. § 553(a).

5

for determining the mutuality of debts for purposes of setoff: "debts must be in the same right and between the same parties, standing in the same capacity."[10]  Put another way, "[t]he mutuality of debts requirement is generally considered satisfied where the creditor is directly obligated to the debtor and the debtor is, in return, directly obligated to the creditor, without the involvement of third-parties or fiduciary relations . . . provided, of course, that all debts involved in the setoff arose prior to the commencement of the bankruptcy case."[11]

Section 553 does not an create an independent right to setoff, but instead preserves a creditor's right to a setoff under applicable non-bankruptcy law.[12]  Accordingly, Massachusetts law governs the validity of a pre-petition setoff in the instant case.[13]

"In Massachusetts it is well-settled that a bank cannot exercise a setoff against a deposit which is known by it to be dedicated to a special purpose."[14]  Generally, when money is deposited in a bank, the bank becomes a simple debtor to the depositor.  Alternatively, where a depositor "pays funds to a bank with an expressed purpose that the funds shall be used for a particular purpose, then

---

[10] *WJM, Inc. v. Massachusetts Dep't. of Pub. Welfare*, 840 F.2d 996, 1011-1012 (1st Cir. 1988), *abrogated by*, *Reopell v. Com. of Mass.*, 936 F.2d 12 (1st Cir. 1991) (*WJM*'s holding is reversed in part regarding prejudgment interest in light of *Missouri v. Jenkins*, 491 U.S. 274 (1989)).

[11] *Tomsic v. Sales Consultants of Boston, Inc. (In re Salience Assoc., Inc.)*, 371 B.R. 578, 589 (Bankr. D. Mass. 2007) (citing 5 Collier on Bankruptcy, ¶ 553.03[3] (15th ed.2007)).

[12] *Pub. Serv. Co. of N.H. v. N.H. Elec. Coop., Inc. (In re Pub. Serv. Co. of N.H.)*, 884 F.2d 11, 14 (1st Cir. 1989).

[13] *Sisk v. Saugus Bank and Trust Co. (In re Saugus Gen. Hosp., Inc.)*, 698 F.2d 42 (1st Cir. 1983).

[14] *In re Milano Textiles, Inc.*, 38 B.R. at 966; *See also In re Saugus Gen. Hosp., Inc.*, 698 F.2d at 47-48; *F.T.C. v, American Institute for Research and Dev.*, 219 B.R. 639, 646 (D. Mass. 1998); *Spencer Cos., Inc. v. Chase Manhattan Bank, N.A.*, 81 B.R. 194, 200 (D. Mass. 1987).

the funds may been deemed to be held in trust."[15]

To illustrate, courts have held that a segregated payroll account whose funds are known by a bank to be dedicated solely to the satisfaction of employee paychecks qualifies as a special deposit and is not subject to setoff.[16]  Moreover, in *In re Milano Textiles, Inc.*, the bankruptcy court held that Malden Trust could not setoff its claim against a court ordered escrow account.[17]  In that case, the debtor had entered into a financing arrangement with five secured lenders, including Malden Trust.[18] When the debtor ceased remitting collections on accounts receivables to Malden Trust and withdrew all its funds from its accounts, Malden Trust notified the debtor of the default and filed a civil action in the state superior court.[19]  It sought the attachment of $100,000 held in another bank.  The superior court ordered that the funds be transferred to Malden Trust to be held "in escrow in a depository account pending further order of this Court."[20]  Around the same time the Debtor filed its bankruptcy petition, Malden Trust attempted to setoff its attorney's fees against the escrow.[21]  The bankruptcy court found that the superior court imposed escrow was a special deposit with the principal purpose

---

[15] *Carpenter v. Suffolk Franklin Savings Bank*, 362 Mass. 770, 777, 291 N.E.2d 609 (1973).

[16] *See In re Saugus Gen. Hosp., Inc.*, 698 F.2d at 47; *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 579 (1st Cir. 1980).  *Cf. Good Stuff Entm't Corp. v. Commerce Bank & Trust Co. (In re Good Stuff Entm't Corp.)*, No. 02-12090-JMD, 2002 WL 1738582 (Bankr. D.N.H. July, 23 2002) (setoff permitted against pre-billed accounts receivable where the debtor did not establish a separate bank account indicating the funds were held for a special purpose).

[17] *In re Milano Textiles, Inc.*, 38 B.R. at 967.

[18] *Id.* at 965.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 966.

7

of preserving and protecting the collateral for the benefit of all five secured lenders, and as such, Malden Trust could not exercise a setoff.[22]  Moreover, even if a true escrow had not been created, the deposit of funds pursuant to the superior court's order was not meant to establish a normal debtor-creditor relationship, precluding a setoff.[23]

In the present case, the Bank concedes that the Account is not a "straight deposit account." It is without question that the sole purpose of the Account was to secure the Debtor's compliance with the covenants and conditions set forth in the Agreement and cover the cost of completion of the ways and improvements in the event of default.  Under the Agreement, the Bank's only obligations with respect to the Account were to hold the Debtor's funds pending authorization from the Town to release said funds to either the Debtor or to the Town.  While the Account is in the Debtor's name, the Debtor has no ability to make a demand upon it.  Only the Town can authorize the Bank to release funds, and only the Bank officers are signatories on the account.  As such, I find that the Account is a special deposit.

The Bank's statement of the issue, whether mutuality was destroyed by the fact that the amount owed to the Debtor was not liquidated at the time the petition was filed, misses the mark. In the first instance, the character of the account is the most significant factor when determining the mutuality of debts.  Here, the Bank did not hold the Account within a creditor-debtor or bank-depositor relationship.  Accordingly, the Bank's debt to the Debtor is not held in the same right or capacity as the Debtor's liability on its deficiency claim.  Thus, there is no mutuality of debt and there can be no setoff.

---

[22] *Id.* at 967.

[23] *Id.*

8

**V. <u>CONCLUSION</u>**

In light of the foregoing, I will enter an order denying the Motion and ordering the Bank to turnover the balance of the  Account to the Trustee.

_____
William Hillman
United States Bankruptcy Judge

Dated: February 13, 2008